UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 04 |
| v. | ) | |
| | ) | Honorable Joan H. Lefkow |
| TIMOTHY WALDING | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO SUPPRESS SHOW-UP IDENTIFICATION**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant Timothy Walding's motion to suppress the out of court identification and potential in court identification of the defendant by government witness Edgar Hernandez. In support thereof, the government responds as follows:

**Background**

On January 3, 2008, the defendant was indicted for possessing a firearm and ammunition after previously being convicted of a crime punishable by more than one year, in violation of Title 18, United States Code, Sections 922(g)(1), 924(e) and 922(k). Defendant has moved to suppress an identification made of him by government witness Edgar Hernandez, as well as any future identifications of him by the same witness.

In January of 2007, Edgar Hernandez worked as a pizza delivery driver for Congress Pizza.[1] On January 16, 2007, an order for food was placed with Congress Pizza for a delivery to 1950 North

---

[1] Although the government understands that testimony and evidence will be adduced at the hearing on defendant's motion, the following factual basis is provided in summary form and is intended to assist the Court in understanding the circumstances surrounding the indicted offense.

Spaulding in the city of Chicago. 1950 North Spaulding is one address of a courtyard apartment complex consisting of multiple addresses within the same physical building. At approximately 11:50 p.m. on January 16, 2007, Hernandez attempted to deliver the order of food to this address. Upon arriving at 1950 North Spaulding, Hernandez called the phone number on the food order receipt and informed the person on the other end of the line that he was outside the address. The person on the phone told Hernandez to go to the courtyard side of the building. Hernandez did as he was instructed and was soon met by two men. One of the two men, later identified as the defendant, was holding a small, silver handgun. The defendant told Hernandez, "[y]ou know what time it is," and then the second man, later identified as Omar Cruz[2], threw Hernandez to the ground. The defendant placed the handgun in Hernandez's mouth and stated, "I ain't playing." The defendant and Cruz then took the food that Hernandez was carrying, as well as his money. The defendant helped Hernandez back to his feet and Hernandez could see both the defendant and Cruz go into 1946 North Spaulding.

After watching the defendant and Cruz go into 1946 North Spaulding, Hernandez went back to where his car was parked and called 911. Within a matter of minutes, the Chicago Police Department responded to Hernandez's 911 call reporting an armed robbery at 1946 North Spaulding. Hernandez informed the arriving officers that he saw the defendant and Cruz enter 1946 North Spaulding and that he was sure that they were still inside. Hernandez explained that, from where he had been standing, he could see both the front and rear entrances to that building and had not seen anyone leave. Hernandez described the defendant to the officers as wearing a ski mask and having

---

[2]Omar Cruz pled guilty to armed robbery in the Circuit Court of Cook County, Illinois to the same facts giving rise to the instant case and will not be charged federally.

green eyes and a ghost tattoo on his neck.

After receiving this description from Hernandez, the officers proceeded to enter 1946 North Spaulding and knocked on the door of the second floor apartment. The door was answered by a woman who lived in the apartment and, while the door was open, the officers could see a male run from one part of the apartment to the another. The officers then entered the apartment and found the defendant and Cruz, as well three women. The officers also recovered the robbery proceeds, the food taken in the robbery, a ski-type mask, and a silver handgun, all within close proximity to the defendant.

The officers then brought Walding and Cruz to the courtyard of the building, where they were presented to Hernandez. Hernandez positively identified Walding as the person who had pointed a gun at his chest and then placed the same gun in Hernandez's mouth and Cruz as the person who had thrown him top the ground.

### **The Identification Was Not Unduly Suggestive and Was Independently Reliable**

The facts of this case establish that the identification of the defendant was not unduly suggestive, and even if the identification was suggestive, sufficient indicia of reliability exist to support the identification. Therefore the defendant's motion to suppress should be denied.

### *The Identification of the Defendant Was Not Unduly Suggestive*

A show up "occurs when only one suspect is presented to [the] witness." *Armstrong v. Young*, 34 F.3d 421, 427 (7th Cir.1994). Although the Seventh Circuit has noted its preference for a lineup that presents the witness with a choice between suspects, it has stated that "showups are proper and not unduly suggestive under certain circumstances." *United States v. Sleet*, 54 F.3d 303, 309 (7th Cir. 1995). Specifically, the Seventh Circuit has recognized that "immediate show ups

may, at times, serve legitimate law enforcement purposes, as they 'allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons.'" *Id.* at 309-10.  See also *United States v. Watson*, 76 F.3d 4, 6-7 (1st Cir. 1996) ("Show-ups that take place immediately after the offense has been committed may be necessary in order to avoid the mistaken apprehension of the wrong person").  Specifically, the Seventh Circuit has stated that "such considerations will justify a show-up in a limited number of circumstances, such as where the police apprehend a person immediately after the crime and in close proximity to the scene," *United States v. Funches*, 84 F.3d 249, 254 (7th Cir. 1996) citing *Sleet*, 54 F.3d at 308-09 (suspect stopped fleeing crime scene shown to witness minutes after crime); *Watson*, 76 F.3d 4, 6 (1st Cir.1996) (same), which was precisely the situation in this case.

Here, the defendant was found, minutes after the robbery took place, inside the apartment building where the robbery occurred.  Police officers arrived at 1946 North Spaulding within minutes of the robbery taking place and were told by Hernandez that he saw the defendant and Cruz go into that building and that they were still inside as Hernandez could observe both exits from his vantage point.  The defendant and Cruz were the only males inside the apartment, and recovered in their immediate vicinity were the handgun and the robbery proceeds.

There is no indication in the reports that the police said or did anything suggestive at the scene prior to the identification by the victim.  Quite the contrary, the police brought two individuals before Hernandez in turn to see if he could identify them.  Hernandez identified them both: the defendant as the man who placed a gun in his mouth, and Cruz as the man who threw him to the ground.  Consistent with the case law, such a show up was justified under the circumstances and was not unduly suggestive.  This show up took place within minutes of the crime itself and allowed the

police to avoid the mistaken apprehension of any person not involved in the commission of this crime.

### The Identification Contains Sufficient Independent Indicia of Reliability

Even assuming that defendant satisfied the first condition, defendant must also establish that the identification is unreliable under the totality of the circumstances. See *Funches*, 84 F.3d at 253. "This consideration is the lynchpin of the due process calculus in identification cases; the Supreme Court has stated that 'the primary evil to be avoided is a very substantial likelihood of irreparable misidentification.'" *United States v. Newman*, 144 F.3d 531, 535 (7th Cir. 1998) quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972). The Supreme Court has recognized that "admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). The Supreme Court has suggested five factors to guide the due process inquiries of the lower courts in identification cases. See *Neil*, 409 U.S. at 199-200. The court should assess the reliability of witness identifications by examining the "opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* Here, each of these factors supports a finding of independent reliability.

### The witness had a good opportunity to view defendant at the time of the crime

Hernandez had an excellent opportunity to view the defendant at the time of the crime. The defendant was close enough to Hernandez to place a gun inside his mouth. Although this crime took place near midnight, Hernandez was clearly able to see the defendant due to the exterior lighting

within the courtyard.

***The witness's degree of attention was great***

In *Newman*, the Seventh Circuit found the witnesses identifications reliable in part because they were the victims of the crime and hence "[t]he witnesses were not merely casual or passing observers of the [defendant]." *Newman*, 144 F.3d at 536. See also *Manson*, 432 U.S. at 115 (finding no due process violation because, among other reasons, the witness was more than a casual observer whose attentiveness to the defendant's appearance suggested that the challenged identification was reliable).

In this case, Hernandez was the victim of a robbery. Due to the fact that he was threatened with a gun, the attention he paid to the defendant was great. In fact, Hernandez was so concerned about what he had observed that, after being robbed, he took up a position where he could see both exits to the building that the defendant entered to ensure that the defendant did not leave before the police arrived. This is not a situation where Hernandez was just a casual observer of someone passing before him. Rather, Hernandez's attention was focused primarily on the defendant and his movements.

***The witness's prior descriptions were accurate***

Hernandez's prior description of the defendant to the police as they were arriving on the scene was accurate. Hernandez described the defendant as having green eyes and a ghost tattoo on his neck. The Chicago Police Department arrest report written in this matter confirms that the defendant does in fact have green eyes and a ghost tattoo on his neck. Furthermore, Hernandez described the defendant as wearing a ski-type mask and a mask fitting this description was recovered inside 1946 North Spaulding at the time of the defendant's arrest.

***The certainty of the identification was strong***

Hernandez's identification was strong.  In addition to his identification matching the previously given description, Hernandez was able to distinguish between the defendant and Cruz in terms of the roles each played in the commission of the robbery.  Hernandez clearly identified the defendant as the person who placed the gun in his mouth and Cruz as the person who threw him to the ground.  Where Hernandez was unequivocal even in differentiating between the defendant and Cruz in terms of actions taken during the robbery, his identification was strong.

***The length of time between the crime and the confrontation***

According to the reports, only a few minutes elapsed between the crime and the confrontation.  The Seventh Circuit has held that such short lapses lend support to the reliability of the identification.  In *Newman*, the Seventh Circuit found that "the expedited nature of the identification (occurring within sixty to ninety minutes after the robbery) enhances the reliability of these witnesses' identifications."  *Newman,144* F.3d at 536.  See also, *United States v. Watson*, 587 F.2d 365, 367 (7th Cir.1978) (finding no due process violation because, among other reasons, a witness identified a bank robber within two hours of the robbery).  Here, the identification happened even sooner than that in *Newman* or *Watson*.

Therefore, assuming arguendo, that the identification of the defendant was suggestive, the evidence is admissible because sufficient indicia of reliability exist to support the identification.  Therefore, defendant's motion to suppress the identification of defendant should be denied.

## The Motion Should be Struck With Respect to Future Identifications

In addition to suppressing the identification at the show-up defendant generally moved to

suppress all future identifications by Hernandez. This portion of the motion, however, is premature and should be struck. Any future identification must be analyzed under its specific circumstances just as Hernandez's original, identification will be analyzed. See *United States v. L'Allier*, 838 F.2d 234, 240 (7th Cir. 1988) (holding that the district court did not err in allowing the in-court identification where the line-up was not suggestive); *United States v. Gornick*, 448 F.2d 566, 570 (7th Cir. 1971) (finding the lineup was not suggestive and the in-court identification did not violate due process). Because the circumstances of any future identification are unknown (should there be any future identification), this portion of the motion is premature. In fact, even in circumstances where the initial identification was suppressed, a later identification may be allowed. *United States v. Goodman*, 797 F.2d 468, 470 (7th Cir. 1986) (allowing an in-court identification where the photo spread was suppressed).

<u>**CONCLUSION**</u>

For the reasons stated herein, the government respectfully requests that this Court deny defendant's motion to suppress.

Respectfully submitted,
PATRICK J. FITZGERALD
United States Attorney


By:    s/ Michael J. Ferrara
       MICHAEL J. FERRARA
       Assistant United States Attorney
       United States Attorney's Office
       219 South Dearborn Street, 5th Floor
       Chicago, Illinois 60604
       (312) 886-7649

Dated: April 16, 2008

-8-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
) 08 CR 04
v. )
) Judge Joan H. Lefkow
TIMOTHY WALDING )

## CERTIFICATE OF SERVICE

It is hereby certified that on April 17, 2008, I caused copies of the GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS SHOW-UP IDENTIFICATION to be served upon:

MARY H. JUDGE
Federal Defender Program
55 E. Monroe Street, Suite 2800
Chicago, IL 60603

by sending the same via messenger service to the above address, on said date on or before 5:00 p.m.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:    s/Michael J.  Ferrara
MICHAEL J. FERRARA
Assistant United States Attorney
219 South Dearborn,5th Floor
Chicago, Illinois 60604
(312) 886-7649

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)                08 CR 04
v. )
)                Judge Joan H. Lefkow
TIMOTHY WALDING )

**NOTICE OF FILING**

TO:    MARY H. JUDGE
       Federal Defender Program
       55 E. Monroe Street, Suite 2800
       Chicago, IL 60603

       Please take notice that on this 16th day of April, 2008, the undersigned filed the following documents in the above-captioned matter, a copy of which attached hereto: GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS SHOW-UP IDENTIFICATION

                         Respectfully submitted,

                         PATRICK J. FITZGERALD
                         United States Attorney


                  By:    s/Michael J.  Ferrara_____
                         MICHAEL J. FERRARA
                         Assistant United States Attorney
                         219 South Dearborn, 5th Floor
                         Chicago, Illinois 60604
                         (312) 886-7649