## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 CR 004 | **DATE** | 5/21/2008 |
| **CASE TITLE** | USA vs. Timothy Walding | | |

**DOCKET ENTRY TEXT**

Defendant Walding's motion to suppress [14] is denied. This case remains set for status hearing on May 28, 2008 at 9:30 a.m.

■[ For further details see text below.]                                                                                  Docketing to mail notices.

### STATEMENT

     Defendant Timothy Walding has been indicted for possessing a firearm and ammunition after previously being convicted of a crime punishable by more than one year in violation of 18 U.S.C. §§ 922(g)(1), 924(e), and 922(k). Walding has moved to suppress the out-of-court identification and any potential future in-court identification of him by witness Edgar Hernandez. For the following reasons, his motion [14] is denied.

     The relevant facts are undisputed.[1] Edgar Hernandez worked for Congress Pizzeria as a delivery driver. On January 16, 2007, he was given a food order for delivery to 1950 North Spaulding in Chicago. 1950 North Spaulding is one address of a courtyard apartment complex consisting of multiple addresses within the same building. When Hernandez arrived in the area, at approximately 11:50 p.m., he called the phone number on the order receipt and advised an unknown male that he was outside. That person instructed him to go to the courtyard side of the building. Two male individuals then exited the apartment complex and approached Hernandez. The first individual displayed a small silver gun, pointed it at Hernandez and stated, "you know what time this is." The second individual dragged Hernandez to the ground, took $37.00 out of his pocket, and took the white pizza box and brown paper bag containing food. At the same time, the first individual placed a gun in Hernandez's mouth, and stated, "I ain't playing."

     The two men fled into the apartment complex at 1946 North Spaulding. Hernandez called 911 on his cell phone. The police arrived within minutes. From his position, Hernandez could see both the front and rear exits of the apartment building and had not seen anyone leave. Hernandez described the first individual to the officers as wearing a ski mask and having green eyes and a tattoo of a ghost on his neck. The officers then entered the apartment building at 1946 North Spaulding. After knocking on one of the apartment doors, the officers were led into that apartment by a Ms. Antoinette Ruiz. Also present, among others, were Walding and Omar Cruz. The officers found a white pizza box, $37.00, a ski mask, and a silver handgun all

**STATEMENT**

within close proximity of Walding. The officers arrested Walding and Cruz and brought both of them, in handcuffs, out into the courtyard where Hernandez was waiting. Hernandez positively identified Walding as the first individual and Cruz as the second.

Walding argues that Hernandez's identification of him described above violated his constitutional right to due process because the show-up procedure used by the police was unreasonably suggestive and unreliable. In analyzing his claim, the court must employ the following test:

First, the court must determine whether the police procedures at issue in the case were, in fact, suggestive. If such suggestiveness is found, the court must next consider whether any unusual or exigent circumstances existed which might, at least in part, have justified the use of the faulty procedures. Finally, and most critically, the court must examine the reliability of the identification, in spite of the suggestive nature of the confrontation. It is clear that the reliability issue is the determining factor in this examination and unjustified, suggestive procedures may be overborne when there are present sufficient indicia of reliability.

*Israel* v. *Odom*, 521 F.2d 1370, 1373 (7th Cir. 1975) (Fairchild, J.) (citing *Neil* v. *Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972)).

Show-up procedures, in which only one suspect is presented to the witness, "have been widely condemned because of their potential to render unreliable, mistaken identifications." *United States* v. *Funches*, 84 F.3d 249, 254 (7th Cir. 1996); *see also United States* v. *Newman*, 144 F.3d 531, 535 (7th Cir. 1998). Show-ups may be appropriate in certain situations, however, such as when they are conducted immediately after the commission of a crime. *Israel*, 521 F.2d at 1374-75 ("[T]he requirement of a non-suggestive identification process should not preclude eye witness, on-the-scene, identification when it is vitally important for the police to ascertain quickly whether they have captured the right person or should continue their search while the criminal is still within easy reach.") (citations omitted); *Funches*, 84 F.3d at 254 (Certain considerations justify a show-up "in a limited number of circumstances, such as where the police apprehend a person immediately after the crime and in close proximity to the scene.") (citations omitted). The facts of this case, in which Walding was apprehended immediately after the alleged commission of a crime and was brought straight outside to be shown to the waiting witness, fit exactly into the circumstances described by the courts in which a show-up procedure, while suggestive, is not unreasonable and is permissible.

Even if the show-up procedure used here was unreasonable, however, the totality of the circumstances convinces the court that Hernandez's identification was nonetheless reliable and that Walding's due process rights were therefore not violated. *See Newman*, 144 F.3d at 535-36 ("This consideration is the lynchpin of the due process calculus in identification cases."); *Funches*, 84 F.3d at 253. To determine reliability, the court must consider five factors:

The Supreme Court has identified several factors that bear on the reliability of identifications: 'the opportunity of a witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'

*Funches*, 84 F.3d at 255 (citations omitted); *see also Newman*, 144 F.3d at 536. Here, all of these factors, and most especially the accuracy of Hernandez's prior description of Walding (including the ghost tattoo on his neck, which Walding does not dispute), weigh in favor of reliability. The court therefore finds that Hernandez's identification of Walding was reliable and that Walding's due process rights were not violated.

1. Both Walding's motion and the government's response note that they are based on a police report prepared in this case by Chicago Police Detective S. Soria. The statements of fact are almost identical. Walding has not filed a reply brief contesting any of the additional facts stated by the government despite having been given leave to do so by April 23, 2008. The court therefore deems those additional facts, which are consistent with Walding's statement, to be uncontested as well.